Entered on Docket
December 31, 2013
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

Signed and Filed: December 30, 2013



_____
**DENNIS MONTALI**
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

```
In re                              ) Bankruptcy Case
                                   ) No. 12-33016DM
O'REILLY & COLLINS, A Professional )
Corporation,                       ) Chapter 7
                                   )
                      Debtor.      )
_____)
```

MEMORANDUM DECISION ON CONTESTED INTERIM APPLICATION
FOR COMPENSATION AND REIMBURSEMENT OF EXPENSES

I. INTRODUCTION

McKenna Long & Aldridge LLP ("McKenna"), counsel for Barry Milgrom, Chapter 7 Trustee, filed its First Interim Application For Compensation And Reimbursement Of Expenses By Counsel For Chapter 7 Trustee ("Application") on November 21, 2013 (Docket No. 152).

Michael S. Danko ("Danko"), the holder of perhaps the largest unsecured claim in this Chapter 7 case, filed his objections to the Application on December 6, 2013 (Docket No. 155).

The court held a hearing on the Application and Danko's objections on December 13, 2013. Appearances were noted in the record.

Having reviewed the Application, Danko's opposition, and McKenna's response, the court awards the sum of $259,555.50 as

McKenna's first interim allowance under 11 U.S.C. § 331, together with its expenses in the sum of $4,043.01.[1]

II. DISCUSSION[2]

Danko's objections to the Application can be broken down into three principal categories. First, he complains that McKenna performed duties that really are the responsibility of the Chapter 7 Trustee. The fees claimed by McKenna and challenged by Danko under this theory amount to $90,509. Second, Danko complains that McKenna should not have billed $5,511.50 for work performed in connection with a claim for compensation by Creditor Managers Association ("CMA"). Finally, Danko challenges $64,367.50 claimed by McKenna in connection with the removal of two lawsuits, the disposition of which are important to the administration of this Chapter 7 case.

The court will address those three categories of objection in turn.

A. **Performance of Trustee's Duties.**

It is well settled that an attorney or accountant may not receive any compensation for the performance of the trustee's duties that are generally performed by a trustee without the assistance of an attorney or an accountant. 11 U.S.C. § 328(b). U.S. Trustee v. Boaldt (In re Jenkins), 188 B.R. 416 (9th Cir. BAP 1995); aff'd 130 F.3d 1335 (9th Cir. 1997). Ferrette & Slater v.

---

[1] By way of interim award on the Application, the court entered an order on December 14, 2013 (Docket No. 158) allowing McKenna 100% of the fees that were not objected to by Danko, 75% of the fees that were objected to by him, and all of the requested expenses.

[2] The following discussion constitutes the court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052(a).

-2-

Case: 12-33016    Doc# 161    Filed: 12/30/13    Entered: 12/31/13 11:07:59    Page 2 of 11

United States Trustee (In re Garcia) 335 B.R. 717 (9th Cir. BAP 2005).

In Garcia, the BAP affirmed the bankruptcy court's denial of fees to an attorney for preparation of a routine employment application and routine negotiations regarding a sale of real property. The BAP reversed, however, a denial of fees for preparation of legal documents such as an agreement and releases. Because drafting legal papers is normally compensable as legal work, the matter was remanded to the bankruptcy court to determine what work was necessary and therefore compensable. Garcia, 335 B.R. at 728.

In the present case Danko has launched a wholesale attack without specifics on McKenna's work in four task categories: Administration, General Asset Investigation, Schedules/Statement of Financial Affairs/Asset List and Claims, totaling $90,509. Danko does not drill down in any meaningful way to isolate specific activities or time entries, but merely makes the charge that "it is apparent that these categories of services largely pertained to routine administrative duties of the trustee ..." and therefore represent services statutorily required by the trustee under 11 U.S.C. § 704.

In response, McKenna defends the requested fees by complaining about Danko's adverse position in the estate, opposing actions the trustee was taking. Going further, McKenna points out that Danko moved to elect a trustee and replace the panel trustee who was designated interim trustee and subsequently became the permanent trustee when the challenge was abandoned.

McKenna goes on to complain the it attempted to bring Danko

to the table and avoid combat between the trustee and the largest unsecured creditor. It then goes on to describe its role in bringing about a recovery of funds from an escrow in London that Danko and the trustee shared pursuant to an agreed formula.

McKenna continues by repeating its contentions concerning the recovery of additional funds from London and then goes on to describe some of its efforts investigating an account, and also gathering information to complete the schedules and statement of financial affairs. Further, McKenna was required to investigate pending matters that were transferred by debtor prior to its making an assignment for the benefit of creditors; that necessarily involved substantial document review and an analysis of those matters that were transferred.

Faced with a generalized objection and a slightly less generalized response, the court independently reviewed McKenna's time records to determine whether some of its work in those four categories should have been performed by the trustee and thus under Garcia cannot be the basis for compensation for McKenna.

Preliminarily it is worth noting that this is a most unusual case. Debtor was a law firm ripped apart by dissension between two of its principals, Danko and Mr. O'Reilly. State court litigation was expensive, intense and complex, and Debtor's fate appeared to be sealed when it chose to make an assignment for the benefit of creditors to CMA.

Involuntary bankruptcy was filed by Danko and two others, and after months of delay an order for relief was entered in early February, 2013. Mr. Milgrom became the interim trustee and promptly hired McKenna to serve as his counsel.

-4-

The time records reflect a great deal of activity in the early days of the case, and McKenna's partner in charge, Mr. Isaacs, had extensive time dealing with a complex variety of problems, including the European funds mentioned above, law firm trust accounts, disposition of pending cases, substitution of counsel in various matters, and, of great complexity, the interplay of this bankruptcy and its preemption of the assignments for the benefit of creditors and the role of CMA as assignee. Thus, while it is not normal for a trustee or his or her professionals to be responsible for preparation of schedules and statement of financial affairs, here that was an inevitable consequence of the situation the trustee and his counsel found themselves in.

Having reviewed the time records for the four categories that Danko challenges, the court finds only a minimum of entries that plainly fall within the trustee's duties.

For example, on February 21 and 22, 2013, Mr. Isaacs devoted all of one-half of an hour to revisions to his firm's employment application. Then on March 22, Mr. Isaacs devoted all of two-tenths of an hour reviewing Bankruptcy Code section 704.

There are numerous time entries of other attorneys at McKenna, in particular Ms. Herman and Ms. Hayes. Those entries reflects support for the myriad tasks that Mr. Isaacs was handling in an attempt to bring some order to this quite complex case. For the court to reduce McKenna's fees by roughly one hour of time out of over $90,000 claimed for these various categories would seem to be an insult to Danko and have no effect on this case. Accordingly, the court will overrule Danko's objections in this

Case: 12-33016    Doc# 161    Filed: 12/30/13    Entered: 12/31/13 11:07:59    Page 5 of 11

category.

B. **Work Related to Credit Managers Association.**

McKenna points out in its application that, at the initial hearing on the trustee's motion under 11 U.S.C. § 543, "the court indicated that it should have been up to CMA to file its own request for payment and that the trustee should not have been involved in attempting to accomplish that task." Despite McKenna's rationale for the work it performed in this category, the court adheres to its initial view. It is true that there was no trustee appointed for several months, and CMA had no one to whom funds should be transferred. That being said, it was CMA's burden, and those of its professionals, to seek compensation in this case under 11 U.S.C. § 543. While McKenna's intentions may have been honorable, the court agrees with Danko in this regard and will sustain his objections. In doing so the court is unclear how Danko concluded that $5,511.50 should be disallowed out of a total of $10,856.50 sought. Danko has not provided the court with a breakdown of the time entries to arrive at such an uneven figure.

The court's own review of the time entries of Mr. Isaacs and Ms. Hayes is equally unavailing. It was certainly necessary for McKenna to advise the trustee as to the reasonableness of the fees sought by CMA and others. Perhaps that is why Danko has only objected to just under 50% of the charges in this category. In its discretion the court will sustain Danko's objections and allow McKenna $5,345 in this category, sustaining Danko's objection to the balance of $5,511.50.

C. **Work In Connection With Removal of Two Adversary**

-6-

**Proceedings.**

On this challenge Danko objects to charges by McKenna under tasks 0005, 0006, 0007 and 00012, totaling $64,367.50. Danko does not challenge charges by McKenna for analyzing the substantive issues presented by the two related state court actions that the trustee removed from two different California superior courts that have ultimately arrived at this court's docket as Adversary Proceeding Nos. 13-3051 and 13-3169 (together the "Razavian Actions"). He complains primarily about the removal of those actions and the time spent on those tasks.

By way of background, Debtors sued Danko in San Francisco Superior Court and sued its former, and now Danko's present client, Ms. Razavian, in Los Angeles Superior Court. There is no need to discuss the underlying merits of the actions as the parties are familiar with them.

Trustee, on McKenna's advice, chose to remove those two actions, with the San Francisco action coming directly to this court and the Los Angeles action being first removed to the Central District Bankruptcy Court, and later transferred by an unopposed venue transfer motion to this court.

One of the preliminary challenges McKenna faced in connection with these matters was that Danko himself had moved to transfer the Los Angeles Superior Court action to San Francisco Superior Court. McKenna was forced to expend time to avoid that deadline while it was considering removal to the Central District Bankruptcy Court and a subsequent transfer to this court. It is ironic, therefore, that McKenna expended time delaying Danko's attempt to transfer the Los Angeles matter to San Francisco when

-7-

in fact that is ultimately what it did assist the trustee in doing, albeit to this court rather than to the San Francisco Superior Court.

As pointed out in McKenna's application, the process for removal from the San Francisco Superior Court to this court appears to be simpler than doing a similar removal from Los Angeles Superior Court to the Bankruptcy Court for the Central District of California. As that was the proper procedure to follow (assuming removal was the right thing to do in the first place) then the court is sympathetic to the fact that McKenna was faced with a more complicated procedural challenge in order to protect the estate's rights in the Razavian Actions pending in Los Angeles.

McKenna goes to some length in its Application describing problems in connection with the Razavian Actions, and in particular its attempt to obtain the full details of the settlement. Danko has opposed much of McKenna's efforts in this regard, and it would not be fair to deny McKenna reasonable compensation for its efforts to protect the interests of the estate. Thus, whether the actions should or should not have been removed in the first place has nothing to do with what was necessary to protect the estate's interests, assuming the actions remained in San Francisco and Los Angeles, or perhaps both ultimately in San Francisco.

In its response to Danko's objections, McKenna argues that removal and opposing remand of the Razavian actions is not just a simple issue of denial of fees because the court's tentative ruling is to remand. The more important issue, as noted above,

-8-

has to do with the nature of settlements that have been achieved in the underlying actions involving Ms. Razavian. The court accepts that the trustee needs to know the details of attorneys fees paid to Danko to settle the underlying Razavian matters. Those details would be relevant, whether the matters were removed or remained pending in one or two different superior courts.

While the court is sympathetic to the dilemmas encountered by McKenna when time was running, particularly in the Los Angeles Superior Court, removal may not have been the most efficient course of action. But the fact that the court has issued a tentative ruling to remand the two adversary proceedings does not mean all fees in connection with the removal should be denied but does bear on the overall reasonableness of the fees being charged. The court believes that over $64,000 for this project is excessive, even if the removals were justified.

First, in task No. 005, there is time recorded on reviewing local rules and this court's procedures, and also seven tenths of an hour charged by Mr. Isaacs reviewing removal of alter ego issues, issues that are not relevant to the Razavian matters. Further, the court notes some duplication of effort by the attorneys handling the matter.

In task No. 0006, removal of the Los Angeles Superior Court action, there are some obvious inefficiencies. Mr. Moe, a partner with a high billing rate, charged time researching and reviewing matters pertaining to removal from the Superior Court to the United States District Court. That, of course, is not what happened as removal was to the Bankruptcy Court. Mr. Moe should not have been spending time determining how to remove the Superior

-9-

Court action to the District Court.  Further, while Mr. Moe's entries reflect small amounts of time, he has several that involve reviewing and revising documents, some of which may not even have been necessary in the Central District Bankruptcy Court.  In April, 2013, Mr. Moe charged small amounts of time for revising various papers.  In short, his entries suggest inefficiencies that should not be billed to this case.

McKenna has charged $14,900.50 in task No. 0007, relating to the removal and various motions.  The court believes that for a firm with McKenna's seasoned litigators and bankruptcy specialists, charges should not be that high for what are relatively simple tasks.  Mr. Moe also has small entries of reviewing and making seven minor changes to a notice of motion; further, there is some duplication in his and other attorneys reviewing the same documents.  As noted above, the complexity of the Razavian matter, and the importance of the specifics of the settlement to the administration of this case, are not the same as the problems of getting the Los Angeles case removed to the Central District Bankruptcy Court and then transferred to San Francisco.

Finally, in opposing Danko's remand motion, Mr. Moe has recorded time even after the Los Angeles matter was transferred to San Francisco.  It is not clear why his efforts were necessary on the case once it was in San Francisco.  Further, Ms. Hayes has time billed to research of mandatory abstention, but there was nothing to abstain from once the action was removed to this court.

In sum, the court believes that the entire undertaking of removing the two actions to the bankruptcy court, admittedly one

via another court in another district, should not have cost the estate as much as McKenna is charging. The court believes a reasonable fee for all of the foregoing is $50,000. Accordingly, it will disallow the balance, namely $14,367.50. And even the allowance of the remaining $50,000 is subject to a final review under 11 U.S.C. § 330 when McKenna's services are concluded in this case. At that time the court can review again the propriety of the expenditure of all time and effort in removing the two Razavian Actions.

III. CONCLUSION

Counsel for McKenna should serve and up-load a form of order granting the Application in part and denying it in part, consistent with this Memorandum Decision. That order should recite that the amount allowed for compensation ($259,555.50) and expenses ($4,043.01) constitute the court's disposition under 11 U.S.C. § 331 of McKenna's First Interim Application for Compensation and Reimbursement of Expenses by Counsel for the Chapter 7 Trustee and should authorize the Trustee to pay the remaining amount of the allowed compensation.

**END OF MEMORANDUM DECISION**